| Fill in this information to identify the case: | |
|---|---|
| United States Bankruptcy Court for the: | |
| Southern District of New York | |
| Case number *(if known):* _____ Chapter 15 | ☐ Check if this is an amended filing |

## Official Form 401

# Chapter 15 Petition for Recognition of a Foreign Proceeding     12/15

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write debtor's name and case number (if known).

1. **Debtor's name**            Porcao Licenciamentos E Participacoes S/A and Brasil Foodservice Manager S.A.

2. **Debtor's unique identifier**

    **For non-individual debtors:**

    ☐ Federal Employer Identification Number (EIN)   __ __ – __ __ __ __ __ __ __

    ☑ Other _Sociedade Anomina_____   Describe identifier _____

    **For individual debtors:**

    ☐ Social Security number: xxx – xx– ___ – ___ ___ ___

    ☐ Individual Taxpayer Identification number (ITIN): 9 xx – xx – ___ ___ ___ ___

    ☐ Other _____.  Describe identifier _____

3. **Name of foreign representative(s)**            Renan Miguel Saad

4. **Foreign proceeding in which appointment of the foreign representative(s) occurred**            Cause No. 0411258-46.2014.8.19.0001, 7th Commercial Court of Rio de Janeiro

5. **Nature of the foreign proceeding**

    *Check one:*

    ☐ Foreign main proceeding
    ☐ Foreign nonmain proceeding
    ☑ Foreign main proceeding, or in the alternative foreign nonmain proceeding

6. **Evidence of the foreign proceeding**

    ☑ A certified copy, translated into English, of the decision commencing the foreign proceeding and appointing the foreign representative is attached.

    ☐ A certificate, translated into English, from the foreign court, affirming the existence of the foreign proceeding and of the appointment of the foreign representative, is attached.

    ☐ Other evidence of the existence of the foreign proceeding and of the appointment of the foreign representative is described below, and relevant documentation, translated into English, is attached.

    _____
    _____

7. **Is this the only foreign proceeding with respect to the debtor known to the foreign representative(s)?**

    ☐ No. (Attach a statement identifying each country in which a foreign proceeding by, regarding, or against the debtor is pending.)
    ☑ Yes

| Debtor | Porcao Licenciamentos E Participacoes S/A and Brasil Foodservice Manager S.A. | Case number (if known) |
|--------|----------------------|----------------|
| | Name | |

**8. Others entitled to notice**

Attach a list containing the names and addresses of:

(i)  all persons or bodies authorized to administer foreign proceedings of the debtor,

(ii)  all parties to litigation pending in the United States in which the debtor is a party at the time of filing of this petition, and

(iii)  all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

**9. Addresses**

Country where the debtor has the center of its main interests:

Brazil

Debtor's registered office:

Avenida Rio Branco, 181 29th Floor
Number        Street

P.O. Box

Rio de Janeiro
City                State/Province/Region    ZIP/Postal Code

Brazil
Country

Individual debtor's habitual residence:

Number        Street

P.O. Box

City        State/Province/Region    ZIP/Postal Code

Country

Address of foreign representative(s):

Avenida Rio Branco, 181 29th Floor

P.O. Box

Rio de Janeiro
City        State/Province/Region    ZIP/Postal Code

Brazil
Country

**10. Debtor's website (URL)**

_____

**11. Type of debtor**

Check one:

☑ Non-individual (check one):

    ☑ Corporation. Attach a corporate ownership statement containing the information described in Fed. R. Bankr. P. 7007.1.

    ❑ Partnership

    ❑ Other. Specify: _____

☐ Individual

| Debtor | Porcao Licenciamentos E Participacoes S/A and Brasil Foodservice Manager S.A. | Case number (if known) |
|---|---|---|
| | Name | |

| 12. Why is venue proper in *this* district? | Check one: |
|---|---|
| | ☐ Debtor's principal place of business or principal assets in the United States are in this district. |
| | ☐ Debtor does not have a place of business or assets in the United States, but the following action or proceeding in a federal or state court is pending against the debtor in this district: |
| | _____ |
| | ☑ If neither box is checked, venue is consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative, because: |
| | Debtor possess assets within the District. |

**13. Signature of foreign representative(s)**

I request relief in accordance with chapter 15 of title 11, United States Code.

I am the foreign representative of a debtor in a foreign proceeding, the debtor is eligible for the relief sought in this petition, and I am authorized to file this petition.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

✗ _____         Renan Miguel Saad
Signature of foreign representative          Printed name

Executed on  _____
              MM  / DD / YYYY

✗ _____         _____
Signature of foreign representative          Printed name

Executed on  _____
              MM  / DD / YYYY

**14. Signature of attorney**

✗ _____    Date  07/02/2019
Signature of Attorney for foreign representative         MM  / DD / YYYY

Warren Gluck
Printed name
Holland & Knight LLP
Firm name
31 W. 52nd St.
Number        Street
New York                              NY        10019
City                                  State     ZIP Code

(212) 513-3200                        warren.gluck@hklaw.com
Contact phone                         Email address

4701421                               NY
Bar number                            State

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
                                            :
In re:                                      :          Chapter 15
                                            :
PORCÃO LICENCIAMENTOS E                     :          Case No. 19 - _____
PARTICIPACÕES S/A                           :
                                            :
        AND                                 :
                                            :
BRASIL FOODSERVICE MANAGER                  :
S.A                                         :
                                            :
        Debtors in a Foreign Proceeding     :
------------------------------------------------------x

### LIST FILED PURSUANT TO BANKRUPTCY RULE 1007(a)(4)

I, Renan Miguel Saad, duly appointed trustee and foreign representative ("**Trustee**") of the

bankruptcy estate of Porcão Licenciamentos e Participacões S.A. ("**Porcão**"), and its holding

company, Brasil Foodservice Manager S.A. ("**BFM**"), a Brazilian bankruptcy estate under the

supervision of the 7th Commercial Court of Rio de Janeiro (the "**Rio Court**"), Cause No. 0411258-

46.2014.8.19.0001, in liquidation as a result of the Rio Court's order, issued pursuant to Article

94 (I) of Law 11.101/2015, hereby submits the following information as required by Rule

1007(a)(4) of the Federal Rules of Bankruptcy Procedure, which provides:

> In addition to the documents required under § 1515 of the Code, a foreign
> representative filing a petition for recognition under chapter 15 shall file with the
> petition: (A) a corporate ownership statement containing the information described
> in Rule 7007.1; and (B) unless the court orders otherwise, a list containing the
> name and address of all persons or bodies authorized to administer foreign
> proceedings of the debtor, all parties to litigation pending in the United States in
> which the debtor is a party at the time of the filing of the petition, and all entities against
> whom provisional relief is sought under § 1519 of the Code.

Fed. R. Bankr. P. 1007(a)(4).

## Statement under Fed. R. Bankr. P. 7007.1

The Trustee hereby states that the following Brazilian corporations are shareholders of

Porção: BFM owns 52%, and Instituto de Gestão Previdenciária do Tocantins and Instituto Serpos

collectively own 20.29%.  No  other company currently owns 10% or more of Porção's shares.

## Name and Address of the Trustee in the Foreign Proceeding of the Foreign Debtor

The following individual, with the corresponding business address, has been duly

appointed as the Trustee by the Rio Court:

| Renan Miguel Saad | Avenue Rio Branco, 181<br>29th Floor, Rio de Janeiro<br>Brazil, 20040-007 |
|---|---|

#68919202_v1

**All Parties to Litigation in which the Foreign Debtor Is a Party that Is
Pending in the United States at the time of the Filing of the Petition**

There is no known pending litigation in the United States in which the Foreign Debtor is

a party.

**All Entities Against Whom Provisional Relief Is Sought under 11 U.S.C. § 1519**

The Trustee is not seeking provisional relief.


I declare, under penalty of perjury under the laws of the United States of America, that the

information set forth above is based on my current knowledge, information and belief after

reasonable inquiry, and in contemplation of and subject to supplementation, true and correct.

_____
Renan Miguel Saad


Dated: March 28, 2019
     New York, New York

           HOLLAND & KNIGHT LLP

           /s/ Warren E. Gluck, Esq.
           Warren E. Gluck, Esq.
           Trisha M. Rich, Esq. (*pro hac pending*)
           HOLLAND & KNIGHT LLP
           31 West 52nd Street
           New York, NY 10019
           Phone: 212-513-3200
           Fax: 212-385-9010
           warren.gluck@hklaw.com
           trisha.rich@hklaw.com

           *Counsel for the Trustee of the Bankruptcy Estate of
           Porcão- BFM*

6226



Poder Judiciário do Estado do Rio de Janeiro

Juízo de Direito da 7ª Vara Empresarial

Comarca da Capital

## DECISÃO

O Administrador Judicial, como se sabe, é um auxiliar do Juízo da recuperação, uma pessoa de confiança do magistrado, que o ajudará na condução do processo. A confiança no trabalho do AJ é fundamental nessa relação, como fartamente ressalta a doutrina e a jurisprudência sobre o tema.

Confiram-se as palavras de Fabio Ulhoa Coelho: "O administrador judicial é escolhido pelo juiz e será sempre uma pessoa de sua confiança com a incumbência de o auxiliar na administração da massa falida" (Comentários à Lei de Falências, 11ª edição, RT, página 102)

Nesse sentido, vale conferir alguns julgados:

AGRAVO DE INSTRUMENTO. FALÊNCIA E RECUPERAÇÃO JUDICIAL. ADMINISTRADOR JUDICIAL. DESTITUIÇÃO. POSSIBILIDADE. ART. 30 DA LEI 11.101/2005. .... 3. O ponto primordial para escolha do administrador judicial pelo Magistrado é que aquele goze da confiança deste, portanto, havendo a quebra da confiança a consequência desta é o afastamento do administrador das funções para a qual foi nomeado. TJRS, AI 70045459880, Quinta Câmara Cível, Relator: Jorge Luiz Lopes do Canto, Julgado em 14/12/2011.

1

0411258-46.2014.8.19.0001

6227

ll

AGRAVO   DE   INSTRUMENTO.   DIREITO   EMPRESARIAL.
RECUPERAÇÃO JUDICIAL. ADMINISTRADOR. AUXILIAR DO JUIZ.
NOMEAÇÃO  E  DESTITUIÇÃO.  CRITÉRIOS  SUBJETIVOS  DO
MAGISTRADO.   QUEBRA   DE   CONFIANÇA.   DESTITUIÇÃO.
POSSIBILIDADE. PRECEDENTES. RECURSO IMPROVIDO. 1. O
administrador judicial figura como um dos auxiliares do juiz na condução
da recuperação judicial. Desta forma, possui papel importante no
processo de recuperação judicial, de modo que a falha na prestação de
suas obrigações pode originar consequências, como a destituição. 2. Em
sendo o administrador um dos auxiliares do Juiz, pode ser nomeado, e
também destituído, mediante critérios subjetivos do magistrado. 3. Desta
forma, e sabendo que o critério para escolha e manutenção do
administrador judicial é a relação de confiança entre ele e o magistrado,
em havendo quebra da confiança a consequência lógica é o seu
afastamento do múnus. TJPE - AI: 3728409 PE Relator: Jones Figueirêdo,
Data de Julgamento: 18/06/2015, 4ª Câmara Cível, Data de Publicação:
09/07/2015

EMENTA: AGRAVO DE INSTRUMENTO - RECUPERAÇÃO JUDICIAL -
ADMINISTRADOR - AUXILIAR DO JUIZ - DESTITUIÇÃO EX OFFICIO -
INTELIGÊNCIA DO ART. 31 DA LEI DE RECUPERAÇÃO JUDICIAL -
DISCRICIONARIEDADE  DO  MAGISTRADO  -  POSSIBILIDADE  -
DECISÃO MANTIDA -RECURSO NÃO PROVIDO. 1. Nos termos do art.
31 da Lei de recuperação Judicial, o juiz, de ofício ou a requerimento
fundamentado de qualquer interessado, poderá destituir o administrador
judicial, no caso de desobediência aos preceitos desta Lei,
descumprimento de deveres, omissão, negligência ou prática de ato lesivo
às atividades do devedor ou a terceiros. 2. O administrador é um auxiliar
do Juiz, e sua destituição ou nomeação se submete à discricionariedade
do magistrado. TJMG, AI 0541809-51.2015.8.13.0000, Relator(a): Des.(a)
Raimundo Messias Júnior, Data de Julgamento: 05/07/2016)


A confiança no trabalho do AJ é fundamental, pois auxilia o Juízo em
múltiplos aspectos, sendo verdadeiro longa manus do Juízo Universal. Assim a
substituição não revela qualquer demérito ao Administrador Judicial atual a ser
substituído, que é escritório de advocacia renomado

Assim, substituo Marcello Macêdo Advogado Advogados pelo Escritório de
Advocacia SAAD Advogados Associados  representado perante este Juízo na
pessoa do Dr. Renan Miguel Saad, a ser encontrado no telefone (21) 2217-1700
www.saadadvogados.com, considerando a expertise.



6228

III

Intimem-se para dizer  se aceita  o encargo e, em caso positivo, para assinarem os termos de compromisso.


Ao Administrador Judicial substituído será remunerado na forma do artigo 24 parágrafo 3º da Lei 11.101/05, devendo as próximas prestações serem direcionadas ao novo nomeado.

Dê-se ainda ciência ao douto Administrador substituído e ao Ministério Público.


Publique-se. I-se.



Rio de Janeiro, 28 de março de 2018.


Ricardo Lafayette Campos
Juiz de Direito


3

6226

I

[Seal]

**Judicial Branch of Rio de Janeiro State**

**7th Business Court**

**Judicial District of the Capital City**


## <u>DECISION</u>


The Bankruptcy Trustee is an assistant to the Reorganization Court; he is a person who has the judge's trust, who will help him conduct the process. Trust in the Bankruptcy Trustee's work is essential in this relationship, as abundantly emphasized in the legal doctrine and jurisprudence on this matter.

The words of Fabio Ulhoa Coelho are confirmed: "The legal trustee is chosen by the judge and will always be a person of his trust, who is given the assignment to assist in the administration of the bankruptcy estate" (Comentários à Lei de Falências, 11th edition, RT, page 102).

In regard to this, it is worth noting some judgments:


INTERLOCUTORY APPEAL. BANKRUPTCY AND JUDICIAL REORGANIZATION. BANKRUPTCY TRUSTEE. REMOVAL. POSSIBILITY. ART. 30 OF LAW 11,101/2005. …3 The main point in the choice of the bankruptcy trustee by the Judge is for the former to be trusted by the latter; therefore, in the event that trust is lost, the consequence of this loss must be the removal of the trustee from the functions for which he was appointed. TJRS, AI 70045459880, Fifth Civil Division, Reporter: Jorge Luiz Lopes do Canto, judged on 12/14/2011.

[Initials]

1

0411258-46.2014.8.19.001

6227

II

INTERLOCUTORY APPEAL. BUSINESS LAW. JUDICIAL REORGANIZATION. BANKRUPTCY TRUSTEE. ASSISTANT TO THE JUDGE. APPOINTMENT AND REMOVAL. SUBJECTIVE CRITERIA OF THE JUDGE. LOSS OF TRUST. REMOVAL. POSSIBILITY. PRECEDENTS. APPEAL DENIED. 1. The bankruptcy trustee is one of the assistants of the judge in his handling of the judicial reorganization. Therefore, he plays an important role in the judicial reorganization process, so failure to carry out his obligations can lead to consequences such as removal. 2. Since the judicial trustee is one of the assistants of the judge, he can be appointed, and also removed, at the subjective discretion of the judge. 3. Therefore, and knowing that the criteria for the choice and maintenance of the judicial trustee is the relationship of trust between him and the judge, if there is a loss of trust, the logical consequence is his removal from the position. TJPE-AI: 3728409 PE Reporter: Jones Figueirêdo. Date of Judgment: 6/18/2015, 4th Civil Division, Date of Publication: 7/9/2015

SUMMARY: INTERLOCUTORY APPEAL – JUDICIAL REORGANIZATION – BANKRUPTCY TRUSTEE – ASSISTANT OF THE JUDGE – REMOVAL BY OWN INITIATIVE – UNDERSTANDING OF ART. 31 OF THE BANKRUPTCY ACT – DISCRETION OF THE JUDGE – POSSIBILITY – DECISION UPHELD – APPEAL DENIED. 1. Pursuant to the terms of Art. 31 of the Judicial Reorganization Act, the judge may, whether on his own initiative or upon a grounded request by any interested party, remove the bankruptcy trustee in the event he disobeys the precepts of this Law, there is a violation of duties, omission, and negligence, or of an act harmful to the activities of the debtor or to third parties. The trustee is an assistant of the Judge, and his removal or appointment is at the judge's discretion. TJMG, AI 0541809-51.2015.8.13.0000, Reporter: Justice Raimundo Messias Júnior. Date of Judgment: 7/5/2016)

Trust in the work of the Bankruptcy Trustee is essential, since he assists the Court in many aspects, and is the veritable "long arm" of the Bankruptcy Court. Therefore, his replacement does not represent any discredit to the current Bankruptcy Trustee to be replaced, which is a well-respected law firm.

Thus, I replace Marcello Macêdo Advogado Advogados [sic] with Advocacia SAAD Advogados Associados, represented before this court in the person of Dr. Renan Miguel Saad, who can be reached at the phone number (21) 2217-1700, www.saadadvogados.com, considering his expertise.

[Initials]

2

0411258-46.2014.8.19.001

6228

III

Make the notification for him to indicate whether he accepts the appointment, and if so, to sign the commitment statement.

The replaced Bankruptcy Trustee will be compensated in accordance with Article 24 (3) of Law 11,101/05, and the next payments shall be made to the new trustee appointed.

Notify the replaced Bankruptcy Trustee and the Prosecutor's Office.

Publish and notify.

Rio de Janeiro, March 28, 2018

[Signature]

Ricardo Lafayette Campos

Judge

3

0411258-46.2014.8.19.001

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                          :
In re:                                    :              Chapter 15
                                          :
PORCÃO LICENCIAMENTOS E                   :              Case No. 19 - _____
PARTICIPAÇÕES S/A                         :
                                          :
          AND                             :
                                          :
BRASIL FOODSERVICE MANAGER                :
S.A.                                      :
                                          :
          Debtors in a Foreign Proceeding :
-------------------------------------------------------x

**VERIFIED PETITION FOR RECOGNITION OF FOREIGN INSOLVENCY
PROCEEDING AND APPLICATION FOR ADDITIONAL RELIEF PURSUANT TO
SECTIONS 1504, 1507, 1509, 1515, 1517, 1520 AND 1521 OF THE BANKRUPTCY CODE**

Renan Miguel Saad, duly appointed trustee and foreign representative ("**Petitioner**" or

"**Trustee**") of the bankruptcy estate of Porcão Licenciamentos e Participações S.A. ("**Porcão**")

and its holding company, Brasil Food Service Manager S.A. ("**BFM**") (collectively the "**Porcão-**

**BFM Estate**"), a Brazilian bankruptcy estate under the supervision of the 7th Commercial Court

of Rio de Janeiro, (the "**Rio Court**"), Cause No. 0411258-46.2014.8.19.0001 (the "**Brazilian**

**Liquidation**"), as a result of the 7th Commercial Court's order (the "**Brazilian Bankruptcy**

**Order**") filed pursuant to Articles 94 (I) and 99 (I) of Law 11.101/2005 (the "**Brazil Bankruptcy**

**Act**" or "**BBA**"), by its undersigned United States counsel, Holland & Knight LLP, respectfully

submits this motion (the "**Motion**"), seeking entry of an Order, substantially in the form attached

hereto as **Exhibit A** (the "**Proposed Order**"): (i) approving the notice of filing of the Official

Form Petition and this Verified Petition, and the accompanying Declaration of Renan Miguel Saad,

and the exhibits thereto, executed on March 28, 2019 (the "**Saad Declaration**"), the accompanying

Declaration of João Accioly, and the exhibits thereto, executed on April 12, 2019 (the "**Foreign Counsel Declaration**"), for entry of an order pursuant to Chapter 15 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "**Bankruptcy Code**"):

(i)   recognizing the Brazilian Liquidation as a foreign main proceeding, pursuant to sections 1517(a) and (b)(1) of the Bankruptcy Code;

(ii)   recognizing the Trustee as Porcão-BFM's foreign representative under 11 U.S.C. § 1509 and 1517(a);

(iii)   granting automatic relief pursuant to sections 1520 and 1521 of the Bankruptcy Code to the Trustee; and

(iv)   granting such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

1.     This Court previously has noted that "[u]nique to the Bankruptcy Code," chapter 15 contains a statement of purpose, which is: "to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency . . . ." *In re Oi Brasil Holdings Coöperatief U.A.*, 578 B.R. 169, 193 (Bankr. S.D.N.Y. 2017) (citing 11 U.S.C § 1501(a)).   Accordingly, when "interpreting Chapter 15" the court shall "consider its international origin, and the need to promote an application of this chapter that is consistent with the application of similar statutes adopted by foreign jurisdictions." *Id.* (citing 11 U.S.C. § 1508).

2.     Among the express objectives of Chapter 15 is to promote the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor[.]" 11 U.S.C. § 1501(a)(3).   Therefore, "Chapter 15 … provides courts with broad, flexible rules to fashion relief that is appropriate to effectuate the objectives of the chapter[.]" *In re Oi S.A.*, 587 B.R. 253, 264 (Bankr. S.D.N.Y. 2018).

3.      The Second Circuit has "frequently understood the importance of judicial deference to foreign bankruptcy proceedings," as "the equitable and orderly distribution of a debtor's property requires assembling *all* claims against the limited assets in a single proceeding; if all creditors could not be bound, a plan of reorganization would fail." *In re Agrokor d.d.*, 591 B.R. 163, 184 (Bankr. S.D.N.Y. 2018) (emphasis in original) (citations omitted); *see also In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. 803, 809 (Bankr. S.D.N.Y. 2018) (citation omitted) ("Comity plays a significant role in cross-border insolvency proceedings.").

4.      The Trustee requests recognition of the Brazilian Liquidation as a foreign main proceeding to ensure that any assets in the United States, including but not limited to assets owned by former managers and employees of Porcão-BFM that have been subject to criminal proceedings in Brazil, and claims the Trustee holds against these parties and others, are properly administered, and the Trustee is enabled to commence any relevant or appropriate litigation or discovery in United States Courts.

5.      Since his appointment on March 28, 2018, the Trustee is currently investigating the assets and potential claims of Porcão-BFM against former managers and employees in order to fill in the estimated outstanding balance/debt of R$ 580 million (US$ 145 million[1]).

6.      As this Petition, the accompanying declarations, and the exhibits thereto demonstrate, the Brazilian Liquidation should be recognized as a foreign main proceeding, as Brazil is the center of main interests ("**COMI**") of Porcão-BFM.

7.      The Trustee seeks precisely the type of relief that Chapter 15 was designed to provide, and the Brazilian Liquidation and this Petition meet all the requirements for recognition and the requested relief. In particular, on March 28, 2018, the Rio Court appointed the Trustee to

---

[1] All currency figures in this document are based upon a USD – BRL FX rate of US$0.25 = R$1.

administer, manage, and pursue the estate of Porção-BFM, including any assets, liabilities, and any ongoing business occurring in connection with the Brazilian Liquidation pursuant to the Brazil Bankruptcy Act.

8.      Moreover, the Trustee is empowered to negotiate and resolve outstanding disputes with any of Porção-BFM's creditors.

9.      Likewise, the Brazilian Liquidation is a collective judicial proceeding as referenced in 15 U.S.C. § 101(23), subject to the oversight and control of the Rio Court, encompassing all creditors and stakeholders of Porção-BFM, which is pending in Brazil, the country in which Porção-BFM maintains its COMI. Porção-BFM was formed in Brazil, maintains its registered office there, and owns or owned the real property therein.

10.     Pursuant to section 1516(c) of the Bankruptcy Code, Brazil is presumed to be Porção-BFM's COMI because both corporations were incorporated and maintain their registered office in Brazil. Brazil is also presumed to be the COMI of Porção-BFM, as the Trustee administers the Brazilian Liquidation from Brazil under the supervision of the Rio Court.

11.     Ultimately, since its origins and as of today, Brazil has been and remains the obvious and demonstrable "nerve center" of **Porção-BFM**. Hence, the Brazilian Liquidation is a "foreign main proceeding" within the meaning of sections 101(23), 1502(4), 1516(c), and 1517(b)(1) of the Bankruptcy Code.

12.     This District and others have recognized similar liquidation proceedings by Brazilian entities, as foreign main proceedings under similar circumstances. *See, e.g., Oi S.A.*, 587 B.R. at 257 (granting recognition of Brazilian liquidation as foreign main proceeding in part because debtor's COMI was Rio de Janeiro); *In re Massa Falida do Banco Cruzeiro do Sul S.A.*, 567 B.R. 212, 217 (Bankr. S.D. Fla. 2017) (recognizing Brazilian liquidation of a Brazilian bank

that had been placed in official liquidation); *In re Petroforte Brasileiro Petróleo Ltda.*, 530 B.R.

503, 506 (Bankr. S.D. Fla. 2015) (recognizing Brazilian liquidation as foreign main proceeding);

*OAS S.A.*, 533 B.R. at 106 (recognizing Brazilian liquidation as foreign main proceeding even

though debtor's registered office was located in Austria, as Brazil remained the COMI because its

"nerve center and headquarters remained in Brazil" and the debtor's employees and advisors

resided in Brazil); *In re Rede Energia S.A.*, 515 B.R. 69, 88 (Bankr. S.D.N.Y. 2014) (recognizing

Brazilian liquidation as foreign main proceeding); *In re Banco Santos, S.A.*, No. 10-47543-BKC-

LMI, 2014 WL 5665025, at *1 (Bankr. S.D. Fla. Nov. 3, 2014) (recognizing the Brazilian

extrajudicial liquidation of a Brazilian as foreign main proceeding and appointing trustee as foreign

representative).

13.    For all of these reasons and as will be shown below, the Trustee respectfully

submits that: (i) the Brazilian Liquidation is a foreign main proceeding within the meaning of

sections 101(23) and 1502(4) of the Bankruptcy Code; (ii) the Trustee is the duly appointed foreign

representative of Porcão-BFM within the meaning of section 101(24); (iii) the Trustee and the

Petition comply with all the requirements of section 1515 and Bankruptcy Rule 1007(a)(4); and

(iv) recognition of the Brazilian Liquidation would not be contrary to public policy under

Bankruptcy Code section 1506.

14.    Under the circumstances, this Court can and should enter an order recognizing the

Brazilian Liquidation as a foreign main proceeding under section 1517(b)(l), appointing the

Trustee as the foreign representative as understood in section 101(24), and granting additional

relief as set forth in sections 1507 and 1520 of the Bankruptcy Court.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over this matter pursuant to 28 USC §§ 157 and 1334, and 11 USC §§ 109 and 1501.

16.    The venue of this proceeding is proper in this District pursuant to 28 U.S.C. § 1410.

17.    This is a core proceeding under 28 U.S.C. § 157(b)(2)(P).

## FACTUAL BACKGROUND

### A.    The Parties

18.    Porcão's business was founded in 1975 by Neodi Luis Mocellin ("**Neodi Mocellin**") along with his cousin Vladimir Jose Mocellin ("**Vladimir Mocellin**").

19.    Porcão's registered office is located at Avenida das Américas, no. 3.500, Edifício Le Monde, Block 2, Room 241, Barra da Tijuca, Rio de Janeiro, Zip code 22.640-102.

20.    Porcão owned and operated a chain of steakhouses targeted to upper and upper middle-income patrons in Brazil. Its business model became very successful in the 1980s, largely due to its varied and innovative menu, offering a combination of typical Brazilian steak and meats, as well as more healthy dietary options, served as a buffet of seafood, salads, and regional food selections.

21.    In the early 2000s, Porcão was the largest restaurant chain in Brazil and had locations in Portugal, United States and Italy. The brand was originally exported through franchising but eventually the franchise model was dropped due to difficulties in long-distance business management.

22.    Porcão's financial demise can be summarized in four moments or phases: (i) it failed attempts at expanding the business overseas after the 2008 financial crisis; (ii) significant management disputes and irregularities arising from a failed allegiance with BFM; (iii) loss of brand image leading to decreased cash flow; and (iv) misappropriation of pension funds obtained in an attempt to refinance the company.

**B.    The 2008 financial crisis ruins plans of U.S. expansion**

23.    In 2008, and with a view to expanding the restaurant chain in the United States and reorganizing its management, Merrill Lynch acquired 49% of Porcão's shares.

24.    However, the 2008 financial crisis forced Merrill Lynch to abandon its investment in the chain.

25.    Merrill Lynch later sold its Porcão shares to businesses owned by Raphael de Melo Tavora Vargas Franco Netto e José Ricardo Tostes Nunes Martins, the owners of another renowned Brazilian restaurant chain, "Garcia e Rodriguez". After acquiring an additional 4% of the shares in Porcão from a third partner, Vargas and Tostes, acting through BFM's predecessor BFG, became the controlling shareholders of the group.

**C.    Management disputes and decreasing cash flow**

26. Before becoming controlling shareholders, Vargas and Tostes were bitter rivals of Porcão's founders. Indeed, Garcia e Rodriguez and Porcão had been on opposite sides of litigation involving one of Porcão's major restaurants, located in front of Rio de Janeiro's Pão de Açúcar.

27. Although the litigation was resolved in the same year BFG acquired the company, the friction between the new owners and the old owners led to increasing disputes between employees and the new management.

28. As part of a plan to cut costs and reorganize accounting, the new owners laid off senior employees, some of which were relatives of the Mocellin founders. In an attempt to end the conflict, BFG proposed buying the family's participation for R$ 45 million. Instead of resolving the dispute, however, the attempted compromise led to another lawsuit, with both sides claiming failure to perform on the contract.

**D.    Loss of brand image**

29.    The combination of employment disputes and the accumulating financial problems

led to employee strikes and lawsuits, which not only eroded the company's funds but also caused a visible decrease in the quality of service.

30.      Customers promptly started reporting that the restaurants would not offer its signature foods, including the famous *picanha*.

31.      This loss of brand image led to a drop of 30% in sales in only two years.

32.      From January to September last year, the group suffered a loss of R$ 137 million (US$ 34.25 million).

### E.      Allegations of fraud and misappropriation of public funds

33.      The BFG controllers attempted to rescue Porcão by raising new money to inject into the business by selling convertible debentures[2] ("CDs") to municipal pension funds in Brazil.

34.      In theory, Porcão was expected to use the proceeds of the sales of CDs to finance the expansion of its business and increase the number of steak houses managed under the brand.

35.      However, on information and belief, substantial portions of the proceeds of CD sales were improperly dissipated.

36.      Moreover, the restructuring was challenged in courts by Rio's State Prosecutor, who claimed the pension funds could not invest in securities other than federal public securities.

37.      The sale of Porcão CDs and shares involved NSG Capital Serviços Financeiros DTVM S.A. ("**NSG Capital**"). NSG Capital's role was to issue and place the Porcão CDs with different entities, including Instituto de Gestão Previdenciária do Tocantins ("**Igeprev**")[3] which invested a total of R$ 460 million (US$ 115 million).

38.      Porcão brought suit seeking to force Igeprev to complete a R$ 47 million (US$

---

[2] A convertible debenture is a debt that can be converted to equity at a specific price in the event of any default on the debtor's part.
[3] Igeprev was the pension fund for the Brazilian state of Tocantins.

11.75 million) investment in the group. This lawsuit was filed in 2016, at a time when it should have been clear to Brazal-Porcão executives that the company was facing difficulty. Management still saw fit to pursue substantial investment in the company when, in all likelihood, it would not have been able to return that investment.

39.     Separate and apart from Igeprev, however, another pension fund for a state IT firm called Instituto Serpros ("**Serpros**") has also heavily invested in Porcão.

40.     Collectively, Igeprev and Serpros currently own 20.29% of the Porcão shares through their investment of approximately R$ 700 million (US$ 175 million).

41.     Upon information and belief, the former executives of Igeprev and Serpros actively colluded with Porcão executives to defraud the beneficiaries of the relevant pension funds as well as Porcão's creditors.

42.     In particular, it is believed that Brazal-Porcão executives made illicit payments or bribes to Igeprev and Serpros executives, in order to facilitate these investments.

43.     There are several circumstances which support the views set out above. Firstly, it is noteworthy that Porcão has substantial outstanding liabilities and gaps in its accounting for which there is no other reasonable explanation.

44.     Additionally, the Labour Court of Rio de Janeiro recently dealt with a claim against Porcão filed by one of its employees.[4] The Court concluded that Serpros and Igeprev were liable and were, in fact, conspiring with Porcão at the corporate level in a manner emblematic of the fraudulent acts that have been discovered during the Trustee's investigation.

45.     Accordingly, the court issued an asset freezing order over Serpros. A true and correct copy of the July 28, 2016 order of the Labour Court is attached hereto as **Exhibit B.**

---

[4] *See* Case No. 0010829-98.2014.5.01.033, Regional Labor Appeals Court of the First Region, 33rd Labor Court of Rio de Janeiro.

46.     Approximately R$ 640 million (US$ 160 million) in assets of Serpros were frozen in this labour claim.

47.     On October 19, 2017, the same Labour Court rejected Serpros' motion to stay the execution order. A true and correct copy of the order denying the suspension of the asset freeze is attached hereto as **Exhibit C.**

48.     Further, an investigative article published by Reuters claims that Igeprev and Serpros are being investigated for possible involvement in other fraudulent activity in Brazil. A true and correct copy of the Reuters article, dated November 1, 2016, is attached hereto as **Exhibit D.**

49.     The Reuters article alleges a bribery scheme which may be linked to investments made by Serpros and Igeprev into a Rio de Janeiro hotel which has been branded by the Trump Organization. In total, the pension funds invested R$ 130 million (US$ 32.5 million) in the developer responsible for building the hotel.

50.     The lead investigator is quoted in the Reuters article as suggesting that investments of the size and nature made by Serpros and Igeprev into the Trump project, contravene basic principles of diversification and liquidity. Simply put, a pension fund would not normally invest heavily in speculative and illiquid ventures like a hotel.

51.     Having regard to the aforementioned facts, it remains the Trustee's view that there is a real possibility that the Porcão was used to launder or dissipate funds obtained from Serpros and Igeprev.

52.     In 2011, Porcão executed a Private Debt Confession Instrument with Hard Rock (the "**Guarantee**"). A true and correct copy of the Guarantee is attached hereto as **Exhibit E**.

53.     Porcão failed to repay the amounts owed under the Guarantee.

54.     In 2013, Porcão and Hard Rock renegotiated the debt owed under the Guarantee.

55.     Porcão defaulted on the renegotiated Guarantee and, according to the Bankruptcy Judgment, incurred liability to Hard Rock in the amount of R$ 682,400.87 (US$ 170,600.21).

56.     The Trustee is reviewing the proofs of debt in the Brazilian Liquidation, but as of November, 2017, the claims filed by creditors thus far are approximately R$ 125 million (US$ 31.25 million).

57.     The assets of Porcão-BFM estate are approximately R$ 100 million (US$ 25 million).

58.     When all of the outstanding liabilities are ultimately adjudicated, it is expected that Porcão-BFM's outstanding balance/debt to be in the region of R$ 580 million (US$ 145 million).

**F.      Brazil Bankruptcy Act**

59.     The BBA is the primary law governing the insolvency of corporations in Brazil. Bankruptcy proceedings can be voluntary or compulsory. In particular, a company's liquidation can be commenced either on the debtor's initiative or prompted by a creditor's claim. A liquidation is decreed upon the occurrence of any of the situations set forth in article 94 of the BBA. Foreign Counsel Declaration, ¶¶19.

60.     If any of the above-mentioned situations occurs, the debtor will be presumed insolvent and a creditor may file a bankruptcy petition and force a debtor into liquidation. Foreign Counsel Declaration, ¶ 20.

61.     Under the BBA, a company may enter into one of three insolvency proceedings: (i) an in-court judicial reorganization, (ii) an out-of-court reorganization, or (iii) a liquidation. Foreign Counsel Declaration, ¶ 21.

62.    Liquidation is a process aimed at collecting and distributing the assets of the debtor among its creditors, with due consideration to the priority of claims and the proportional allocation of the earnings. Foreign Counsel Declaration, ¶ 21.

63.    The assets are sold through public auction unless the general meeting of creditors determines otherwise. In most cases, the disposed assets are free of any burden, and the purchaser does not succeed in the debtor's obligations, including its tax and labor-related liabilities. Foreign Counsel Declaration, ¶ 31.

64.    Although there are no specific clawback rules in relation to an in-court judicial reorganization, some acts may be nullified *vis-a-vis* the bankruptcy estate, provided the act in question occurred within a 90 day period, or "legal term." Foreign Counsel Declaration, ¶ 32-33.

65.    A general principle underlying Brazilian insolvency is that claims of investors and creditors within the same class are treated on a *pari passu* basis pursuant to article 126 of the BBA. Foreign Counsel Declaration, ¶ 35.

66.    The disposal or encumbrance of assets is subject both to the Court's approval and to the approval of the Creditors Committee. Foreign Counsel Declaration, ¶ 38.

67.    The Trustee has the authority to verify each of the debtor's creditors by requiring proof of these claims, except for debts arising from an employment relationship, which are verified by courts specialized in labor and employment. The Trustee is also charged with publicizing the list of creditors in the Official Gazette and carrying out the sale of assets subject to approval by the court and the Creditors Committee. Foreign Counsel Declaration, ¶ 41.

68.    The original bankruptcy trustee was appointed with the liquidation decree of February 7, 2017. However, due to other professional obligations, he was unable to fulfill his duties and the Trustee was named as his replacement on March 28, 2018.

69.    A duly appointed trustee has the following additional prerogatives in a liquidation

proceeding:

a) inform, through an official department, when and where creditors shall have daily access to the bankrupt's books and documents;

b) review the debtor's bookkeeping;

c) list processes taken and take over the judicial representation of the bankrupt estate;

d) receive and open all mail addressed to debtor and deliver to debtor whatever is not of the estate's regard;

e) provide a report on the causes and circumstances that led to bankruptcy within 40 days after execution of the term of agreement, renewable for the same period, and such report shall provide all parties' criminal and civil liabilities;

f) collect the debtor's books and documents and draft the collection record;

g) evaluate all estate collected;

h) hire public evaluators upon judicial authorization to evaluate the assets if trustee believes it lacks technical skills;

i) carry out any acts required for asset settlement and payment to creditors;

j) request that the court grants the advanced sale of perishable goods or goods subject to large depreciation or hazardous/costly conservation;

l) carry out all acts to conserve rights and actions, collect debts and record the respective settlement;

m) redeem, for the benefit of the estate and upon court authorization, all pledged, seized or legally collected goods;

n) represent the bankrupt estate in court, and hire an attorney at law, if applicable, whose fees shall be previously agreed and approved by the Managing Committee;

o) file for all measures and diligences required for fulfillment hereof, protection of the bankrupt estate or efficiency of administration;

p) provide a financial statement of the administration clearly listing revenue and expenses to the court no later than the 10th day following the month which has ended;

q) deliver all assets and documents of the estate held by trustee to its successor, under liability risk;

r) render accounts at the end of the process when replaced, dismissed or resign the position.

Foreign Counsel Declaration, ¶ 44.

70.     The Brazilian Liquidation is a fair and equitable proceeding, as all creditors and interest holders of the Estate have an opportunity to be heard by the Rio Court and no creditor will be prejudiced because the proceeding is foreign-based.

### G.     Porção and the Trustee's activities in Brazil

71.     Porção was founded in 1975 and was formed as a corporation under the laws of Brazil.

72.     As set forth in the Liquidation Decree, Porção's headquarters are located at Avenida das Américas, no. 3.500, Edifício Le Monde, Block 2, Room 241, Barra da Tijuca, Rio de Janeiro, Zip code 22.640-102.

73.     BFM was located at Avenida das Américas, no. 3.500, Edifício Le Monde, Block 2, Room 211, Barra da Tijuca, Rio de Janeiro, Zip code 22640-102.

74.     At all relevant times, Porção-BFM were incorporated and conducted their primary activities in Brazil. They were therefore properly governed by the laws of Brazil. Further, most of the directors and shareholders are situated in Brazil. Thus, Brazil has been the "nerve center" of the company since its incorporation.

75.     At all relevant times, Porção-BFM's operations overseas have represented a very minor percentage of the company's business.

76.     On June 7, 2010, Porção dissolved its U.S. subsidiary, which became effective upon the filing of the Articles of Dissolution with the Secretary of State of Florida on June 10, 2010.

77.     Although it is likely that certain assets may have been dissipated out of the structure

{File: 00071151.DOCX / 1}                    14
#62907249_v1

and may be traced elsewhere, the known assets and accounts of the structure can be found in Brazil.

78.    The debts and obligations, including the default under the Guarantee with Hard Rock that commence the liquidation, which resulted in Porcão and BFM being placed into liquidation, originated in Brazil.

79.    Further, the majority of the work done in relation to the structure and post-liquidation has been conducted in Brazil. The Trustee operates out of an office in Brazil.

80.    Lastly, creditors and banks with connections to Porcão and BFM have been advised to contact the Trustee in order to process claims and deal with assets. To that end, the Trustee has instructed the investigative team at ARC Consultoria e Projetos (a Brazilian firm) to assist with the recovery.

81.    It is respectfully submitted that Brazil is clearly the COMI of Porcão and BFM and there is no basis for rebutting the presumption that Brazil is the COMI of Porcão and BFM.

82.    In accordance with 11 U.S.C. §1515(c), the Trustee is aware of no other pending foreign insolvency proceedings except the Brazilian Liquidation in which Porcão or BFM is the subject of the proceeding.

83.    In accordance with Bankruptcy Rule 1007-1, the Trustee is unaware of any pending actions in the United States in which Porcão or BFM is named as a party. The Porcão-BFM estate does not seek provisional relief against any party at this time. The disclosures required under Bankruptcy Rule 7007.1 are attached hereto as **Exhibit F**.

**ARGUMENT**

**I.    THE BRAZILIAN LIQUIDATION SHOULD BE RECOGNIZED UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

84.    Section 1517 of the Bankruptcy Code mandates entry of an order recognizing a "foreign proceeding" if it appears that recognition will not undermine U.S. public policy and: "(1)

such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign

non-main proceeding within the meaning of section 1502; (2) the foreign representative applying

for recognition is a person or body; and (3) the petition meets the requirements of section 1515."

11 U.S.C. § 1517(a).

85.    Each of those requirements is met here, and entry of an order in the form of **Exhibit**

**1** to this Petition will significantly aid the Trustee's efforts to administer Porção-BFM's assets and

liabilities, and ensure a fair and equitable treatment of, and greater distributions to, Porção-BFM's

creditors and interest holders.

### A.    The Brazilian Liquidation is a Foreign Proceeding and the Trustee is a Foreign Representative

86.    "As a threshold matter, the appointed representative of a foreign debtor seeking

recognition must establish that the proceeding is a 'foreign proceeding'" (*In re Ashapura

Minechem Ltd.*, 480 B.R. 129, 135-36 (Bankr. S.D.N.Y. 2012)) within the meaning of section

101(23)    of    the    Bankruptcy    Code,    which    defines    a    foreign

proceeding as:

> a collective judicial or administrative proceeding in a foreign
> country, including an interim proceeding, under a law relating
> to insolvency or adjustment of debt in which proceeding the assets and
> affairs of the debtor are subject to control or supervision by a foreign
> court, for the purpose of reorganization or liquidation.11 U.S.C.
> § 101(23).

87.    The definition of "foreign proceeding" incorporates the term foreign representative,

which the Bankruptcy Code in turn defines as "a person or body, including a person or body

appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization

or liquidation of the debtor's assets or affairs or to act as a representative of such foreign

proceeding." 11 U.S.C. § 101(24). In the context of the liquidation of a Brazilian entity, this Court

has held that "the Bankruptcy Code does not require the judicial authorization or appointment of the foreign representative." *OAS S.A.*, 533 B.R. at 95 (emphasis added) (permitting board of directors of debtor to appoint legal officer as foreign representative under section 101(24)).

88.    There is no question that the Trustee and the Brazilian Liquidation satisfy each of these requirements.

89.    First, the Brazilian Liquidation is a "judicial proceeding in a foreign country," Brazil, subject to the control and supervision of the Rio Court.

90.    Second, the Rio Court must give express prior authorization to the Trustee to realize assets and settle any liabilities of Porcão-BFM.

91.    Third, the Brazilian Liquidation of Porcão-BFM is subject to "a law relating to the insolvency or adjustment of debt." Indeed, the BBA is Brazil's primary legislation governing the insolvency of corporations.

92.    Finally, the Brazilian Liquidation is a "collective ... proceeding" because it "considers the rights and obligations of all creditors." *See also, e.g., In re Poymanov*, 571 B.R. 24, 33 (Bankr. S.D.N.Y. 2017) (noting that a foreign insolvency proceeding qualifies as a collective proceeding if it "considers the rights and obligations of all of a debtor's creditors, rather than a single creditor") (citations omitted); *Ashapura Minechem Ltd.*, 480 B.R. at 136.

93.    All claims against Porcão-BFM may be submitted in the Brazilian Liquidation and all creditors can appeal the decisions of the Trustee directly to the Trustee, and subsequently to the Rio Court. All creditors have been publicly notified of the Liquidation Decree and the Trustee is required to submit periodic financial reports on the progress of the Brazilian Liquidation.

94.    Most important, the creditors of Porcão-BFM in the Brazilian Liquidation, irrespective of whether the creditors are Brazilian or foreign, are treated *pari passu* with respect to

satisfaction of their claims. Any transfers of the claims or obligations of Porção-BFM by the Trustee does not diminish or otherwise modify the rights of the creditors in Porção-BFM's estate.

95.    Finally, the Brazilian Liquidation is being administered by the Trustee, who was appointed over a year ago by the Rio Court in order to carry out the sale of Porção-BFM's assets and repayment of the creditors. As such, the Trustee qualifies as a "person authorized in a foreign proceeding to administer the reorganization or the liquidation of Porção-BFM's assets or affairs", within the meaning of Section 101(24).

96.    As discussed above, this Court has found that official insolvency proceedings brought pursuant to the laws of Brazil qualify as a "foreign  proceeding," and that the individual appointed to oversee the foreign debtor's estate qualifies as a "foreign representative" for purposes of section 101(23) and (24). *See, e.g., Oi S.A.*, 587 B.R. at 257 (granting recognition of Brazilian liquidation as foreign main proceeding in part because debtor's COMI was Rio de Janeiro and appointing legal officer of the debtor as foreign representative); *Massa Falida*, 567 B.R. at 217 (referencing 2014 order recognizing Brazilian liquidation of a Brazilian bank placed in official liquidation by and appointing trustee as foreign representative); *Petroforte Brasileiro de Petróleo Ltda.*, 530 B.R. at 506 (recognizing Brazilian liquidation as foreign main proceeding and appointing trustee as foreign representative); *OAS S.A.*, 533 B.R. at 106 (recognizing Brazilian liquidations as foreign proceedings even though the debtor's registered office was located in Austria, as Brazil remained the COMI because its "nerve center and headquarters remained in Brazil" and all of the debtor's employees and advisors resided in Brazil and appointing debtor's attorney-in-fact as foreign representative); *Rede Energia S.A.*, 515 B.R. at 88 (recognizing Brazilian liquidation as foreign proceeding).

**B.    The Brazilian Liquidation is a Foreign Main Proceeding**

97.    In the absence of evidence to the contrary, Porcão-BFM's registered offices in Brazil are presumed to be its COMI. *See OAS S.A.*, 533 B.R. at 100 (*citing* 11 U.S.C. § 1516(c)). Here, there is no such contrary evidence.

98.    The Second Circuit has held "that a debtor's COMI should be determined based on its activities at or around the time the Chapter 15 petition is filed, as the statutory text suggests." *In re Fairfield Sentry Ltd.*, 714 F.3d 127, 137 (2d Cir. 2013).

99.    It is well-established that in determining an entity's COMI, the "COMI analysis permits consideration of any relevant activities, including liquidation activities and administrative functions." *Id.* Courts consider any relevant factors, including: (i) the location of the debtor's assets; (ii) the location of the debtor's books and records; (iii) the location of the majority of the debtor's creditors; (iv) the commercial expectations and knowledge of the debtor's creditors; (v) the location of those who actually manage the debtor; and (vi) the location of the debtor's headquarters. *See, e.g., OAS S.A.*, 533 B.R. at 100-101 (citation omitted) (describing consideration of the debtor's "nerve center" as including from where the debtor's activities are controlled).

100.    Applying the foregoing factors to this case, there is no doubt that Porcão-BFM's COMI is Brazil. As an initial matter, a substantial portion of Porcão-BFM's assets – bank accounts, real estate and ownership interests in subsidiaries - are located in Brazil.

101.    Under the circumstances, the Trustee submits that there is ample evidence and precedent to support recognition of the Brazilian Liquidation as a foreign main proceeding.

**C.    The Brazilian Liquidation Meets All Other Requirements for Recognition**

102.    In addition to being a foreign main proceeding brought by a duly appointed foreign representative, the Brazilian Liquidation meets all other requirements for recognition under section 1515 of the Bankruptcy Code.



103.    The public policy exception, which requires a "narrow reading," is inapplicable to the recognition of the Brazilian Liquidation. *See Fairfield Sentry*, 714 F.3d at 139. This Court has previously concluded that "Brazilian bankruptcy law meets our international standards of fairness and accords with the course of civilized jurisprudence" in that it is a "comprehensive bankruptcy law that in many ways mirrors our own." *OAS S.A.*, 533 B.R. at 103 (quoting *Rede Energia*, 515 B.R. at 69). The Brazilian Liquidation is conducted in accordance with the BBA, by a duly-appointed Trustee, who is subject to oversight by a competent court. Creditors are publicly notified of the financial status of Porcão-BFM, and their claims are considered *pari passu* without regard to nationality, can be appealed, and are not diminished by the transfer or other assumption of Porcão-BFM's assets or liabilities.

104.    The Petition is accompanied by a copy of the Liquidation Decree, which evidences the eventual commencement of the liquidation of Porcão-BFM and the appointment of the original trustee. *See Oil Brasil Holdings*, 578 B.R. at 194 (a Chapter 15 petition "must be accompanied by certain evidentiary documents that are *presumed authentic in the absence of contrary evidence*") (emphasis added). The Petition also is accompanied by a copy of the Appointment Decree, which evidences the appointment of the Trustee by a competent court.

105.    The Petition is also accompanied by a declaration that contains a statement identifying all foreign proceedings with respect to the Brazilian Liquidation known to the Trustee. *See* 11 U.S.C. §§ 1515(b), (c).

106.    The Petition likewise is accompanied by a declaration containing the information required by Federal Rule of Bankruptcy Procedure 1007, including the disclosures required by Federal Rule of Bankruptcy Procedure 7007.1. The statement indicates the absence of other persons or entities known to the Trustee authorized to administer foreign proceedings with respect

to Porcão-BFM, and a list of all parties to litigation with Porcão-BFM, in the United States. All documents supporting the Petition are in English. *See* 11 U.S.C. § 1515(d).

107.    For all of these reasons, this Court can and should find that all of the requirements for recognition of the Brazilian Liquidation as a foreign main proceeding under Chapter 15 have been satisfied.

### REQUEST FOR WAIVER OF LOCAL BANKRUPTCY RULE 9013-1(a)

108.    It is respectfully requested that this Court waive and dispense with the requirement set forth in Rule 9013-l(a) of the Local Rules for the United States Bankruptcy Court for the Southern District of New York that any motion filed by Porcão-BFM be accompanied by a memorandum of law on the grounds that the relevant authorities in support of the Petition are contained herein.

### HEARING DATES AND NOTICES

109.    Section 1517(c) of the Bankruptcy Code requires that "[A] petition for recognition of a foreign proceeding be decided upon at the earliest possible time." Bankruptcy Rule 2002 sets forth a twenty-one day notice requirement to parties in interest with certain exceptions to approve the Petition. If no objections to this Petition are filed by the date ordered for such objections, the Trustee requests that the Court enter the proposed order recognizing the Brazilian Liquidation as a foreign main proceeding without a hearing pursuant to Local Rule 2002-2. The Trustee and his counsel, however, are of course willing to appear and will be prepared to answer any questions that the Court may have.

110.    Subsection (q)(1) of Rule 2002 governs notice of a petition for recognition of a foreign proceeding. The Trustee does not currently seek provisional relief nor is there pending United States litigation. Nevertheless, out of an abundance of caution, the Trustee's first day filings

in this case have been served upon all of Porção-BFM's creditors located in the United States concurrently with the filing of this Petition, if any.

111.    No previous application for the relief requested in this Petition has been made in this or any other court in the United States.

## CONCLUSION

**WHEREFORE**, the Trustee respectfully requests that this Court enter an Order, substantially in the form of Exhibit 1 to this Petition, granting the relief requested herein and such other and further relief as may be just and proper.

I declare, under penalty of perjury under the laws of the United States of America, that the information set forth above is based on my current knowledge, information and belief after reasonable inquiry, and in contemplation of and subject to supplementation, true and correct.

_____
Renan Miguel Saad

Dated: May 16, 2019
New York, New York

HOLLAND & KNIGHT LLP

 /s/ Warren E. Gluck, Esq.
Warren E. Gluck, Esq.
Trisha M. Rich, Esq. (*pro hac pending*)
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Phone:  212-513-3200
Fax: 212-385-9010
warren.gluck@hklaw.com
trisha.rich@hklaw.com
*Counsel for the Trustee of the Bankruptcy Estate of Porção- BFM*