UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                                 :
In re:                                                           :   Chapter 15
                                                                 :
PORCÃO LICENCIAMENTOS E                                          :   No. 19 - _____ (____)
PARTICIPAÇÕES S/A,                                               :
                                                                 :
        and                                                      :
                                                                 :
BRASIL FOODSERVICE MANAGER S.A.                                  :
                                                                 :
        Debtors in a Foreign Proceeding                          :
-----------------------------------------------------------------x

## DECLARATION OF RENAN MIGUEL SAAD IN SUPPORT OF THE CHAPTER 15 PETITION OF PORCÃO LICENCIAMENTOS E PARTICIPACÕES S/A AND BRASIL FOODSERVICE MANAGER S.A. FOR RECOGNITION AS A FOREIGN INSOLVENCY PROCEEDING

I, RENAN MIGUEL SAAD, hereby declare, under penalty of perjury of the laws of the United States of America as follows:

1.  I am the current Judicial Administrator ("**Trustee**") of the estate of Porcão Licenciamentos e Participações S.A. ("**Porcão**") and its successor-in-interest, Brasil Food Service Manager S.A. ("**BFM**") (collectively, "**Porcão-BFM**"). Porcão-BFM estate is currently in liquidation in Brazil under the supervision of the State of Rio de Janeiro 7th Commercial Court of Rio de Janeiro ("**Rio Court**"), Cause No. 0411258-46.2014.8.19.0001 (the "**Brazil Liquidation**"), filed pursuant to articles 94 and 99 of Federal Law No. 11.105 ("**Brazil Bankruptcy Act**" or "**BBA**").

2.  On March 28, 2018, Rio Court appointed me as successor trustee of Porcão-BFM estate pursuant to article 31 of the BBA. In my appointment, Rio Court specifically noted my expertise in insolvency and restructuring matters. A true and correct copy of this appointment order, together with an English translation, is attached hereto as **Exhibit 1**.

3.  I respectfully submit this declaration in support of a Trustee's petition seeking recognition by this court (the "**Bankruptcy Court**") of Brazil Liquidation as a foreign main proceeding pursuant to 11 U.S.C. § 1517 (b) of the United States Bankruptcy Code ("**Bankruptcy Code**"), as well as other related relief.

4.  I make this declaration as an officer of Rio Court and for the benefit of all the stakeholders of Porcão-BFM.

5.  I am duly authorized to swear this declaration on behalf of Porcão-BFM estate. The matters to which I refer in this declaration are, unless stated otherwise, within my personal knowledge and true. My knowledge of the facts described in this declaration derives primarily from my work as Trustee of Porcão-BFM estate and my review of the relevant documents associated with the Brazil Liquidation. Regarding matters there are not within my personal knowledge, the sources are stated herein, and such information is true to the best of my knowledge and belief. I am over the age of 18 and, if called, I will testify competently about the facts set forth herein.

6.  During my time of practice, I gained substantial experience working with distressed and insolvent corporate entities aiming to restructure or liquidate the relevant companies. I have many years of experience in my field, previously taken appointments from Rio Court for the purpose of winding up the affairs of Brazilian companies. I reside in Brazil and my office is located in Rio de Janeiro, at Avenida Rio Branco, 181, 29th floor. Most of my work as Trustee occurs in Brazil.

7.  I am familiar with the Model Law on Cross-Border Insolvency adopted by the United Nations Commission on International Trade Law (UNCITRAL) and approved by resolution of the General Assembly on 15 December 1997. I also understand that the model law

has been adopted in the United States as Chapter 15 of the Bankruptcy Code.

8. A bankruptcy petition was filed by the unsecured creditor Hard Rock Café RJ Ltda ("**Hard Rock**") against Porcão based on Porcão's default on a guarantee to Hard Rock ("**Guarantee**"). The petition also requested the placement of BFM into bankruptcy as the successor-in-interest of Porcão that likewise refused to satisfy the amounts owned under the Guarantee.

9. On July 2, 2017, the Rio Court entered a judgment placing Porcão and BFM into bankruptcy based on the "bankruptcy resulting from default" provision in the BBA ("**Brazil Bankruptcy Order**"). A true and correct copy of the Bankruptcy Judgment, together with an English translation, is attached hereto as **Exhibit 2**.

10. For the reasons discussed below, I submit that (i) I am a duly appointed "foreign representative" of the Brazil Liquidation and that the Brazilian Liquidation constitutes a "foreign proceeding" within the meaning of sections 101 (24) and (23) of the Bankruptcy Code, respectively; (ii) this case was properly commenced in accordance with the requirements of chapter 15 of the Bankruptcy Code; and (iii) the Brazilian Liquidation satisfies all the requirements to be recognized as a "foreign main proceeding" pursuant to sections 1502(4) and 1517(b)(1) of the Bankruptcy Code.

### Background Information of Porcão and BFM

11. Porcão was founded in 1975 by Neodi Luis Mocellin and his cousin Vladimir Jose Mocellin (collectively, "**Mocellins**") and operated a chain of up steakhouses catering to wealthy and influential patrons in Brazil.

12. BFM is Porcão's controlling shareholder.

13. With a view to expand the restaurant chain, Mocellins sold 49% of the shares of

Porcão to Merrill Lynch. In 2008, however, Merrill Lynch sold its Porcão shares to Brasil Foodservice Group S.A. ("**BFG**"), which later became BFM. BFG acquired an additional 4% of Porcão shares and became its controlling shareholder.

14.     At the same time as it expanded Porcão, BFG cut costs, often where it could not, and this contributed to put the chain into an unprecedented crisis, culminating with the closing of several restaurants and the accumulation of labour liabilities.

15.     My work as Trustee of Porcão-BFM and my own investigations into BFG's records reveal that after BFG acquired Porcão shares, Porcão was spending substantial sums - which likely came from this operation.

16.     The spending of shareholder capital (without meaningful return) was likely because Porcão was not generating positive cashflow. Porcão simultaneously faced debt collection action by employees, unpaid vendors and landlords for Porcão steakhouses.

### Porcão Defaults on the Guarantee to Hard Rock

17.     On May 25, 2011, Porcão executed a Private Debt Confession Instrument with Hard Rock (**Exhibit 3**). Porcão failed to repay the amounts owed under the Guarantee, and, in 2013, Porcão and Hard Rock renegotiated the debt.

18.     After Porcão's default on the renegotiated amounts, Hard Rock filed the bankruptcy petition against Porcão and BFM - the successor-in-interest/beneficial owner of Porcão.[1]

19.     On July 2, 2017, Judge Paulo Assed Estefan issued Bankruptcy Order for Porcão and BFM on grounds that Porcão and thus BFM's default on the Guarantee presented "the legal

---

[1] BFM objected to the Brazil Liquidation on grounds that Hard Rock filed a separate debt collection action in a Brazilian regional court. Rio Court rejected this argument on grounds that the debt collection action sought only repayment of the debt owned on the Guarantee prior to the 2013 renegotiation, which amounted to roughly R$5 million.



requirements that must lead to a decree of bankruptcy, with the consequent transformation of the economic fact of bankruptcy into a legal state of bankruptcy."

20. The Bankruptcy Order converted Hard Rock's status as an unpaid lender to a creditor in the Brazil Liquidation to be included in the creditor list administered by the Trustee. According to the Bankruptcy Order, Porcão's owed R$ 682.400,87 to Hard Rock.

21. The duties of a Trustee include, but are not limited to, establishing proofs of creditors' claims, excluding or modifying credits resulting from labor disputes[2] and collecting assets for distribution to creditors of the estate.

22. The Trustee is an officer of Rio Court and "plays an important role in the judicial reorganization process" and, as such, "serves as the veritable 'long arm' of the Bankruptcy Court."

23. Pursuant to the Bankruptcy Order, Judge Estefan also: (1) terminated the business activities of Porcão and BFM; (2) directed creditors to provide claims within 15 days of the publication of the Bankruptcy Order; (3) suspended all actions and executions against Porcão and BFM; and (4) set a sixty day pre-bankruptcy period.

24. Judge Estefan initially appointed as trustee a Brazilian attorney named Marcello Macêdo. On March 28, 2018, Mr. Macêdo resigned his appointment and, on the same day, pursuant to article 31 of the Judicial Reorganization Act, Rio Court appointed me as the new Trustee.

25. Therefore, I am reviewing the proofs of debt in the Brazil Liquidation, but as of February 28, 2019, the claims filed by creditors thus far are approximately R$23 million (US$5.75 million). The assets of Porcão-BFM estate are approximately R$100 million (US$25

---

[2] In one such labor dispute, the corporate veil of Porcão was pierced to hold the Mocellins personally liable.

million).

26.     When all of the outstanding liabilities are ultimately adjudicated, I expect Porcão-BFM's outstanding balance/debt to be in the region of Real $580 million (US$145 million).

### The Fraudulent Investments into Porcão

27.     During my investigation into Porcão-BFM's affairs, I have learned that Porcão was likely involved in the fraudulent sale and/or distribution of convertible debentures[3] (the "**Porcão CDs**") and its shares to certain pension funds in Brazil and also to the public.

28.     In theory, Porcão was expected to use the proceeds of the sales of Porcão CDs to finance the expansion of its business. However, it appears that substantial portions of the proceeds of the Porcão CDs were improperly dissipated.

29.     Among other investors, Porcão CDs and shares were sold to a pension fund called Instituto de Gestão Previdenciária do Tocantins ("**Igeprev**"), which invested R$460 million (US$115 million) in Porcão.

30.     Another pension fund for a Brazilian state-owned informational technology firm called Instituto Serpros ("**Serpros**") has also heavily invested in Porcão.

31.     Collectively, Igeprev and Serpros currently own 20.29% of Porcão shares through their investment of approximately R$700 million (US$175 million).

32.     The investments into Porcão by Igeprev and Serpros are indicative of impropriety that characterized many of the decisions of the Porcão executives, particularly as it approached insolvency.

33.     First, Igeprev's investment in Porcão was ultimately the subject of Brazilian litigation after a claim was filed to force Igeprev to complete a R$47 million (US$11.75 million)

---

[3] A convertible debenture is a debt that can be converted to equity at a specific price in the event of any default on the debtor's part.

{File: 00071150.DOCX / 1}                                6

investment in Porcão. This lawsuit was filed in 2016, at a time when it should have been clear to Porcão executives that the company was facing difficulties. They still however saw fit to pursue substantial investment in the company when, in all likelihood, it would not have been able to be returned.

34. In the wake of the Brazil Liquidation, Igeprev investment has received scrutiny particularly in circumstances whereby Brazilian law has provisions confirming that vested shareholders may be liable for the debts of bankrupt companies.

35. Ultimately, it appears that former executives of Igeprev and Serpros actively colluded with Porcão executives to defraud the beneficiaries of the relevant pension funds as well as the creditor of Porcão. There are evidences that Porcão executives made illicit payments to Igeprev and Serpros in order to facilitate substantial investment by these pension funds into Porcão. Additionally, it is apparent that those funds invested were ultimately fraudulently dissipated, to the detriment of Porcão and its creditors.

### Litigation in Brazil Validates the Allegations of Fraud

36. There are several circumstances which support the views set out above. I note firstly that Porcão has substantial outstanding liabilities and gaps in its accounting for which there is no other reasonable explanation.

37. It should also be noted that the Labour Court of Rio de Janeiro recently dealt with a claim against Porcão filed by one of its employees.[4] The Court concluded that Serpros and Igeprev were liable and were, in fact, conspiring with Porcão. Accordingly, the court issued an asset freezing order over Serpros (**Exhibit 4**). Approximately Real $640 million (US$160 million) in assets of Serpros were frozen in this labour claim.

---

[4] *See* Case No. 0010829-98.2014.5.01.033, Regional Labor Appeals Court of the First Region, 33rd Labor Court of Rio de Janeiro.

{File: 00071150.DOCX / 1}    7

38. On October 19, 2017, the same Labour Court rejected Serpros' motion to stay the execution order. A true and correct copy of the order denying the suspension of the asset freeze is attached hereto as **Exhibit 5.**

## Qualifications for Recognition and Jurisdiction In the United States

39. I have been advised about the requirements to qualify for recognition under Chapter 15 of the Bankruptcy Code, the Chapter 15 Petition of Porcão-BFM.

40. In particular, I am advised that the Chapter 15 Petition must be brought by a "foreign representative" in respect of a "foreign proceeding" that is pending before a "foreign court," all as defined in the Bankruptcy Code. The foreign debtor also must meet one of the bases for qualifying as a debtor under the Bankruptcy Code.

41. First, I have been advised by United States counsel of the definition of "foreign representative" as referred to in 11 U.S.C. §101(24) and believe that as the Trustee of Porcão-BFM, I qualify as such.

42. I have been appointed by Rio Court as the Trustee. In the Appointment Order, Rio Court describes the Trustee as "an assistant to the . . . Court" and the "person who has the judge's trust, who will help him conduct the process. Trust in the Bankruptcy Trustee's work is essential in this relationship, as abundantly emphasized in the legal doctrine and jurisprudence on this matter."

43. In furtherance of my responsibilities as Trustee and subject to the oversight of Rio Court, I have also collected in and am distributing on a *pari passu* basis, the assets of Porcão and BFM.

44. In addition, I am authorized by Rio Court to bring and defend legal proceedings in the name of or on behalf of the bankrupt estates that I am managing. As such, I am responsible for representing the Porcão-BFM estate in the Brazil Liquidation and in all other matters,

{File: 00071150.DOCX / 1}    8

including in this matter, as its "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code.

45. Second, I also have been advised by United States counsel that a "foreign court" is defined in section 1502(3) of the Bankruptcy Code as "a judicial or other authority competent to control or supervise a foreign proceeding." I am advised by Brazilian counsel, Mr. João Accioly, and respectfully submit, that Rio Court clearly qualifies as a "foreign court" as defined in section 1502(3).

46. Among other reasons, Rio Court is "competent to control or supervise" this proceeding because it is the sole tribunal administering the liquidation of the Porcão-BFM estate. I take instruction from Rio Court and it retains plenary power over the liquidation of Porcão-BFM. Among other powers, I cannot dispose or encumber the assets of the Porcão-BFM estate without prior approval of Rio Court.

47. In other words, no other court or other judicial or administrative body has control over the Brazilian Liquidation.

48. Third, I have been advised by United States counsel that a "foreign proceeding" is a "collective judicial or administrative proceeding in a foreign country… Under a law related to insolvency or the adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. §101(23).

49. The Brazil Liquidation meets this test fully. In addition to plenary control over the Brazilian Liquidation, Rio Court suspended all other legal actions and claims against Porcão and BFM and prohibited distribution of the assets of the Porcão-BFM estate without its permission. This is done in order to streamline the claims and distribution processes and to ensure that the all

creditors of the estates are treated equally and that the liquidation remains a true collective proceeding.

50. Finally, I have been advised by United States counsel of the requirements for recognition as a foreign main proceeding and a non-main proceeding under section 1517(b)(1) and (2) of the Bankruptcy Code, respectively.

51. I believe that the Brazilian Liquidation qualifies as a foreign main proceeding and that Brazil is the center of main interest ("**COMI**") of Porcão and BFM.

52. Brazil is where the companies were incorporated and conducted their primary activities. They were therefore properly governed by the laws of Brazil. Further, the owners, directors and shareholders were for the most situated in Brazil. As such, the seat of management and management decisions were at all material times in Brazil.

53. Although it is likely that certain assets may have been dissipated out of the structure and may be traced elsewhere, the known assets and accounts of the structure can be found in Brazil.

54. The debts and obligations, including the default under the Guarantee with Hard Rock that commenced the liquidation, which resulted in Porcão and BFM being placed into liquidation, originated in Brazil.

55. Further, the majority of the work done in relation the structure, post liquidation, has been conducted in Brazil. I operate out of my office in Brazil.

56. Lastly, creditors and banks with connections to Porcão and BFM have been advised to contact me in order to process claims and deal with assets. To that end, I have instructed the investigative team at ARC Consultoria e Projetos (a Brazilian firm) to assist with the recovery.

57. I respectfully submit that Brazil is clearly the COMI of Porcão and BFM and there is no basis for rebutting the presumption that Brazil is the COMI of Porcão and BFM.

58. In accordance with 11 U.S.C. §1515(c), I am aware of no other pending foreign insolvency proceedings except the Brazil Liquidation in which Porcão or BFM is the subject of the proceeding.

59. In accordance with Bankruptcy Rule 1007-1, I am unaware of any pending actions in the United States in which Porcão or BFM is named as a party. I note that the Porcão-BFM estate does not seek provisional relief against any party at this time. The disclosures required under Bankruptcy Rule 7007.1 are attached hereto as **Exhibit 6**.

60. For all of these reasons, I respectfully request that this Court enter an Order recognizing me as the duly authorized foreign representative of the Porcão-BFM estate and naming the Brazil Liquidation as a foreign main proceeding under chapter 15 of the Bankruptcy Code.

61. Pursuant to section 1746 of title 28 of the United States Code, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Rio de Janeiro, March 28, 2019

_____
Renan Miguel Saad